**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK MATA, ) <br> an individual ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ORCHARD ENTERPRISES NY, INC. ) <br> f/k/a ) <br> THE ORCHARD ENTERPRISES INC. ) <br> a New York Corporation ) <br> ) <br> and ) <br> ) <br> INTERNATIONAL MANAGING ) <br> RIGHTS CORP. ) <br> a Delaware corporation, ) <br> ) <br> Defendants. ) | Case No. 17-cv-03011 <br><br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

COMES NOW Patrick Mata, and for his cause of action of copyright infringement alleges as follows:

**I.   PARTIES**

1.   Plaintiff Patrick Mata ("Mr. Mata" or "Plaintiff") is an individual residing in Albuquerque, New Mexico. Mr. Mata is a songwriter and performer and commonly known as the founder of Gothic Rock. Some of Mr. Mata's early works are the songs including in the album, "The Vision and The Voice" ("TVTV"). Mr. Mata owns the rights to the compositions and sound recordings of the songs on TVTV.[1] Mr. Mata has not authorized any third party to reproduce or

---

[1] Copyright law recognizes two separate and distinct copyrights in the recording of every song: the copyright in the underlying composition (music and lyrics) and the copyright in the recording of the performance itself. Copyright law also grants different rights to the holder of the composition copyright and the sound recording copyright. For example, while both copyright holders have the

1

distribute those compositions or sound recordings.

2. Defendant Orchard Enterprises NY, Inc. f/k/a The Orchard Enterprises Inc. ("The Orchard") is a corporation organized and existing under the laws of New York with its principal place of business located at 23 East 4th St. 3rd Flr., New York, New York 10003. The Orchard was and is a business that publishes and distributes musical content on behalf of artists and content owners through various outlets that artists and certain content owners have traditionally not had direct access to, such as iTunes, Google Play, Amazon Music, Spotify, etc. Upon information and belief, The Orchard enters into licensing agreements with artists and content owners to obtain the rights necessary to distribute musical content. Without authorization, The Orchard has reproduced and distributed compositions and sound recordings of songs contained on TVTV.

3. Upon information and belief, Defendant International Managing Rights Corp, Inc. ("IMR" and, together with The Orchard, "Defendants") is a corporation organized and existing under the laws of Delaware with its principal place of business located at 1000 N. West St. Ste. 1501, Wilmington, Delaware 19801. Upon information and belief, IMR is a record company purporting to have rights to certain compositions and sound recordings that reproduces and distributes those compositions and sound recordings through various distribution channels, including by way of entering into a contract with The Orchard to reproduce and distribute those compositions and recordings through outlets available to it. Upon information and belief, without

---

exclusive right to reproduce and distribute, for compositions (but not sound recordings) that right is subject to the "mechanical license" provision of copyright law, which allows someone else to reproduce and distribute a recording of the composition provided they take the appropriate steps and pay the statutory royalty. Additionally, while composition copyright holders are granted a full exclusive public performance right (requiring, for example, a license to the composition (usually obtained from a public performance licensing entity, like ASCAP and BMI)), sound recording copyright holders are granted only a digital audio public performance right, which is subject to certain exceptions and statutory licenses.

authorization, IMR has engaged The Orchard to distribute compositions and sound recordings of songs from TVTV without authorization.

4. This is an action arising under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*.

5. Plaintiff seeks compensatory, treble, and/or statutory damages; an award of costs and attorneys' fees; and such other and further relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

6. Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338.

7. Personal jurisdiction over Defendants and venue in this Court pursuant to 28 U.S.C. § 1391 are proper as, The Orchard is incorporated in this state and resides in this District, and, on information and belief, IMR entered into a contract with The Orchard, in this judicial district, pertaining to the infringing distribution of Mr. Mata's copyrighted works. Further, on information and belief, Defendants have also regularly conducted business in this judicial district and have committed acts of copyright infringement by reproducing, distributing and offering for sale copyrighted musical compositions and sound recordings to residents of this judicial district.

8. Defendants uploaded copyrighted musical compositions and sound recordings to interactive media websites, which are accessible by New York residents.

## III. FACTUAL ALLEGATIONS

9. Plaintiff, Patrick Mata, is a founding member of the pioneering gothic rock band Kommunity FK ("KFK"). KFK's first studio album was TVTV. Mr. Mata and CeCe Cole wrote the compositions and performed the songs contained on TVTV.

10. Mr. Mata is an owner of federal Copyright Registration No. SR0000046432 ("the '432 Registration"), for music, lyrics, and sound recordings. A true and correct copy of the '432 registration is attached hereto as Exhibit 1. The '432 Registration protects the musical compositions and sound recordings on TVTV. Among others, TVTV contains the following seven tracks: "Bullets," "Unknown to You," "Tribulations," "Restrictions," "No Fear," "We Will Not Fall," and "To Blame" (collectively, "the Copyrighted Works").

11. The '432 Registration issued on August 8, 1983. Ex. 1.

### THE ORCHARD'S PRIOR UNAUTHORIZED DISTRIBUTION OF KFK COMPOSITIONS AND SOUND RECORDINGS

12. In 2006, Mr. Mata and Invisible, Inc. d/b/a Invisible Records ("Invisible") entered into an Exclusive Artist Recording Agreement ("the Recording Agreement"). A true and correct copy of the Recording Agreement is attached hereto as Exhibit 2.

13. In the Recording Agreement, Mr. Mata granted certain rights to the compositions underlying certain existing KFK recordings, including the Copyrighted Works, to Invisible's publishing entity, Mattress Factory Music, and the associated sound recordings ("Initial Masters") to Invisible. *See* Ex. 2. Specifically, Mr. Mata temporarily assigned the copyright in the compositions to the Copyrighted Works to Mattress Factory Music and licensed the sound recordings for the Copyrighted Works to Invisible Records.

14. Pursuant to the Recording Agreement, the assignment of the compositions in the Copyrighted Works terminated once Mr. Mata became fully recouped:

> [T]he compositions listed in 'Schedule A' shall revert to Writer/Artist upon recoupment of all above stated recording and marketing Advances. For avoidance of doubt, the compositions contained in Schedule A shall revert once Artist's royalty account reverts to a 'recouped' status.

Ex. 2, ¶7.(b).

15. Also pursuant to the Recording Agreement, the license of the sound recordings in, among others, the Copyrighted Works, terminated "Seven (7) Years from the execution of [the Recording Agreement] . . . [and] One Option to extend the term for an additional Seven (7) Years…." Ex. 2, ¶3.A.  Invisible did not exercise the Option and The Seven Year period would have expired in October 2013. Ex. 2.

16. In September of 2013, Mr. Mata entered into an Agreement and Release ("the Release") with Invisible and Mr. Martin Atkins (on behalf of Invisible and its assigns) terminating the Recording Agreement, relinquishing all rights obtained by Invisible, Atkins, and their assigns under the Recording Agreement, transferring all rights obtained by Invisible therein to Mr. Mata, and deeming Mr. Mata fully recouped under the Agreement.  A true and correct copy of the Release is attached hereto as Exhibit 3.  Specifically, the Release stated:

> The Recording Agreement is terminated and all rights obtained by Atkins and/or Invisible and/or their assigns through said agreement are relinquished and/or transferred to Mata as may be required to fully vest ownership in such rights to Mata, including at least: . . .
>
> i. any claim to rights in or to the Initial Masters, the compositions and sound recordings embodied therein, the associated copyrights and recordings, and any right to advertise, sell, lease, license, receive payments or royalties derived therefrom or related thereto, remix or reproduce such works, in whole or in part, individually, collectively, or as part of a collective or compilation work;
>
> …
>
> vi. all publishing rights to Mata's compositions, such as those obtained in Paragraph 7 of the Recording Agreement, including the compositions embodied in any sound recordings of the works at issue in the Recording Agreement; and
>
> vii. any claims for recoupment.

Ex. 3, ¶1.a.

17. In a letter attached to the Release, Mr. Atkins indicated that The Orchard had acquired Invisible's digital catalog. *See* Ex. 3 at Ex. C thereto. Mr. Atkins further represented that The Orchard should have provided Mr. Mata with royalties for the commercial exploitation of his work. *Id.*

18. To the extent that Invisible's rights to any KFK compositions or sound recordings were allegedly transferred to anyone (including The Orchard), any such rights transferred by Invisible were subject to the limitations on Invisible's underlying rights as set forth in the Recording Agreement. Pursuant to the Recording Agreement and the September 2013 Release, Invisible relinquished any rights it had to any KFK compositions or sound recordings as of September 2013.

19. In the Release, Invisible and Atkins also represented and agreed that they would "ensure that Mata's works previously distributed through Invisible are no longer commercially exploited by Atkins, Invisible, or any entities that have acquired rights to such works through Atkins and/or Invisible (including The Orchard)." Ex. 3, ¶1.b.

20. Invisible and Atkins informed The Orchard that they had lost all rights to authorize The Orchard's distribution of KFK sound recordings.

21. In or around March of 2015, Mr. Mata noticed that The Orchard was distributing Mr. Mata's compositions and sound recordings without his authorization.

22. In March 2015, counsel for Mr. Mata contacted The Orchard. A true and correct copy of the March 2015 correspondence between Mr. Mata's counsel and The Orchard is attached hereto as Exhibit 4. Mr. Mata's counsel requested that The Orchard remove the KFK sound recordings and provide an accounting of all revenues generated based on those sound recordings. *See* Ex. 4.

23. A representative of The Orchard responded indicating that the sound recordings had been removed but that all accounting information would have to go through the label, which was later identified as Underground Inc. ("Underground"). *See* Ex. 4.

24. Upon information and belief, Underground was/is a subsidiary of Invisible.

25. Counsel for Mr. Mata informed The Orchard that Invisible had relinquished all rights to authorize distribution of KFK sound recordings, and that Invisible had so instructed The Orchard. *See* Ex. 4. Mr. Atkins confirmed that representation to The Orchard. *See* Ex. 4. Shortly thereafter, The Orchard removed the KFK sound recordings.

### THE ORCHARD SECOND AND IMR'S RECENT UNAUTHORIZED DISRIBUTION OF KFK SOUND RECORDINGS

26. In August of 2016, Mr. Mata noticed again that, without authorization from Mr. Mata or anyone acting on his behalf, certain tracks from TVTV were being offered for sale, download, and streaming on several websites as tracks on a compilation album known as "The Secret Archives of Death Rock and Gothic Punk" ("The Secret Archives"). True and correct copies of screen captures of The Secret Archives, as available on several websites in December of 2016, are attached as Exhibit 5.

27. The below screenshot is a sample of The Secret Archives as they were available for sale on the iTunes Store:



Ex. 5.

28. As seen above, The Secret Archives contains all seven of the Copyrighted Works.

29. On January 3, 2017, counsel for Mr. Mata sent notices pursuant to the Digital Millennium Copyright Act ("Take Down Notices") to the websites that were offering The Secret Archives for sale or download. True and correct copies of the receipts of those notices are attached hereto as Exhibit 6.

-8-

30. One of the receipts from the Take Down Notices indicated that The Orchard had provided The Secret Archives. *See* Ex. 6. This was the second time that The Orchard was distributing Mr. Mata's Copyrighted works without authorization.

31. On January 9, 2017, The Orchard contacted counsel for Mr. Mata. A true and correct copy of the January 2017 communications between The Orchard and Mr. Mata's counsel is attached hereto as Exhibit 7. The Orchard indicated that it had received Mr. Mata's complaint and had passed the communication to the relevant record label. *See* Ex. 7.

32. In response, counsel for Mr. Mata requested that The Orchard immediately remove the KFK tracks from The Secret Archives and provide an accounting of all sales of The Secret Archives. *Id.* Counsel for Mr. Mata also reminded The Orchard that it had previously distributed KFK's recordings without authorization, and provided a copy of the prior correspondence. *Id.* Counsel for Mr. Mata also informed The Orchard that if it did not immediately remove KFK's sound recordings, that KFK would use the refusal as further support for a claim of willful copyright infringement. *Id.*

33. On January 13, 2017, counsel for Mr. Mata received a notification from Google Play ("the Google Notification"). A true and correct copy of the Google Notification is attached hereto as Exhibit 8. The Google Notification contained an email from The Orchard to Google Play in which The Orchard requested that Google Play not remove the unauthorized tracks because IMR was claiming rights. *See* Ex. 8. The Orchard indicated that Mr. Mata could contact one Nathan Berman directly if he had further concerns. *Id.*

34. On January 19, 2017, counsel for Mr. Mata received notification from the iTunes Store ("the iTunes Notification"). A true and correct copy of the iTunes Notification is attached hereto as Exhibit 9. The iTunes Notification indicated that the Copyrighted Works had been

removed from the iTunes Store. *See* Ex. 9.

35. A spreadsheet attached to the iTunes Notification indicated that Defendants were not asserting rights in the musical compositions in certain territories, including the United States, but that Defendants were asserting rights in the sound recordings. *See* Ex. 9.

36. Neither IMR nor The Orchard acquired a mechanical license to the composition copyright for the Copyrighted Works. Further, neither IMR nor The Orchard had any rights to the sound recording copyright for the Copyright Works.

37. Upon information and belief, as an entity in the business of publishing and distributing musical sound recordings, The Orchard is intimately familiar with the copyright laws of the United States and well aware that it is unlawful to copy and distribute musical compositions and sound recordings without the consent of the owner.

38. Upon information and belief, IMR was and is a business that publishes and distributes musical content on behalf of artists. Upon information and belief, IMR is intimately familiar with the copyright laws of the United States and well aware that it is unlawful to copy and distribute musical compositions and sound recordings without the consent of the owner.

39. On information and belief, Defendants were at all times well aware that unauthorized use and distribution of musical compositions and sounds recordings constitutes copyright infringement.

40. Defendants had full knowledge that they were infringing the composition and sound recording copyrights in the Copyrighted Works by distributing the Copyrighted Works without authorization.

41. The Orchard continually and repeatedly distributes musical compositions and sound recordings, as it has twice done with Mr. Mata's Copyrighted Works alone, without

obtaining authorization with full knowledge, or, at a minimum, intentional blindness, that doing so constitutes copyright infringement.

42. On information and belief, The Orchard (or its related entities and/or predecessors in interest) was sued for copyright infringement on at least four other occasions. *See e.g., V.P. Music Group, Inc. et al v. Kemar McGregor, et al* (1:11-cv-02619 -BW-MDG (E.D.N.Y. June 1, 2011) (wherein The Orchard settled and was dismissed); 1:12-cv-05453-ALC-JCF *Blagman v. Apple, Inc. et al* (S.D.N.Y. July 13, 2012) (wherein all parties stipulated to a voluntary dismissal with prejudice); *Curtom Classics, LLC et al v. Orchard Enterprise, [sic] Inc*.1:10-cv-01425-TWT (N.D. Ga. May, 11, 2012) (wherein plaintiffs voluntary dismissed with prejudice); *TufAmerica Inc v. Mardi Gras Records, et al* 2:02-cv-03821-MVL (E.D. La. Dec. 27, 2002) (wherein Orchard Records, LLC settled and was dismissed)

43. Defendants reproduced and distributed the Copyrighted Works in willful disregard of the copyright laws of the United States.

### COUNT I – COPYRIGHT INFRINGEMENT OF REG. NO. SR0000046432: MUSICAL COMPOSITIONS

44. Mr. Mata repeats and incorporates the allegations contained in the preceding paragraphs.

45. Mr. Mata is an owner of all right, title and interest in and to the Copyright Registration SR0000046432 protecting the musical compositions in the Copyrighted Works.

46. Mr. Mata has not authorized Defendants to reproduce, distribute, or otherwise use the Copyrighted Works.

47. Further, upon information and belief, Defendants did not obtain a mechanical license.

48. On information and belief, Defendants have reproduced and distributed the Copyrighted Works.

49. Defendants' conduct has infringed Mr. Mata's composition copyrights in the Copyrighted Works.

50. Defendants' unauthorized use was intentional and a willful act of copyright infringement.

51. Mr. Mata is entitled to recover actual damages from Defendants' acts of copyright infringement as herein alleged.

52. Mr. Mata has sustained substantial damages because of Defendants' aforesaid infringement of the rights in the Copyrighted Works in that the consuming public is mistakenly attributing the Copyrighted Works to the Defendants, thereby depriving the Plaintiff of income he otherwise would have been able to receive from his Copyrighted Works.

53. Mr. Mata is further entitled to recover from Defendants the profits Defendants have obtained because of their act of copyright infringement.

54. Alternatively, Mr. Mata is entitled to recover from Defendants statutory damages in an amount up to $150,000.00 per work infringed.

55. Mr. Mata is also entitled to receive attorneys' fees incurred to recovery for Defendants' willful infringement.

### COUNT II – COPYRIGHT INFRINGEMENT OF REG. NO. SR0000046432: SOUND RECORDINGS

56. Mr. Mata repeats and incorporates the allegations contained in the preceding paragraphs.

57. Mr. Mata is an owner of all right, title and interest in and to the Copyright Registration SR0000046432 protecting the sound recordings of the Copyrighted Works.

-13-

58. Mr. Mata has not authorized Defendants to reproduce, distribute, or otherwise use the Copyrighted Works.

59. On information and belief, Defendants have reproduced and distributed the Copyrighted Works.

60. Defendants' conduct has infringed Mr. Mata's sound recording copyrights in the Copyrighted Works.

61. Defendants' unauthorized use was intentional and a willful act of copyright infringement.

62. Mr. Mata is entitled to recover actual damages from Defendants' acts of copyright infringement as herein alleged.

63. Mr. Mata has sustained substantial damages because of Defendants' aforesaid infringement of the rights in the Copyrighted Works in that the consuming public is mistakenly attributing the Copyrighted Works to the Defendants, thereby depriving the Plaintiff of income he otherwise would have been able to receive from his Copyrighted Works.

64. Mr. Mata is further entitled to recover from Defendants the profits Defendants have obtained because of their act of copyright infringement.

65. Alternatively, Mr. Mata is entitled to recover from Defendants statutory damages in an amount up to $150,000.00 per work infringed.

66. Mr. Mata is also entitled to receive attorneys' fees incurred to recovery for Defendants' willful infringement.

**RELIEF REQUESTED**

WHEREFORE, Patrick Mata prays for judgment against Defendants as follows:

      A.     For a permanent injunction enjoining Defendants and any associated officers, agents, servants, employees, attorneys, and all persons in active concert or participation with each or any of them, from committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the unauthorized reproduction or distribution of copies or derivatives of Plaintiff's Copyrighted Works;

      B.     For all damages to which Plaintiff is entitled, including Defendants' profits and Plaintiff's lost profits pursuant to 17 U.S.C. § 504(b);

      C.     Alternatively, at Plaintiff's election, for statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law;

      D.     Awarding Plaintiff exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

      E.     Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the above;

      F.     Awarding to Plaintiff interest, including pre-judgment interest, on the foregoing sums;

      G.     Awarding Plaintiff its reasonable costs and other expenses of litigation, including attorneys' fees; and

      H.     Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable in this matter.

Dated: April 25, 2017  Respectfully submitted,

/s/ Reid P. Huefner
Reid P. Huefner (*pro hac vice* pending)
**IRWIN IP LLC**
1333 Burr Ridge Parkway, Ste. 200
Burr Ridge, IL 60527
Telephone: 630-756-3101
Email: rhuefner@irwinip.com

*Attorney for Plaintiff Patrick Mata*